# Simon D. Von Steuben *v.* Central Railroad Company of New Jersey, Appellant.

*Railroads—Lease—Connecting roads—Acts of April* 23, 1861, *and February* 17, 1870.

Under the Acts of April 23, 1861, P. L. 410, and February 17, 1870, P. L. 31, a New Jersey railroad company whose line is not in any way connected with the railroad of a Pennsylvania corporation has no power to lease the railroad of the latter company.

*Negligence—Railroads—Fire from sparks.*

In an action against a railroad company to recover damages for loss by fire caused by the alleged emission of sparks from a locomotive, the case should be submitted to the jury where witnesses for the plaintiff testify that the engine which was alleged to have caused the fire had on various occasions thrown out coals of unusual size.

Argued March 8, 1898. Appeal, No. 385, Jan. T., 1898, by defendant, from judgment of C. P. Northampton Co., Dec. T., 1893, No. 49, on verdict for plaintiff. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ. Affirmed.

Trespass to recover damages for injuries alleged to have been caused by sparks from a locomotive. Before SCOTT, J.

The facts are substantially the same as those which appeared at the first trial of the case reported in 178 Pa. 367.

The court charged in part as follows :

The right to recover damages by the plaintiff against the de-

fendant does not depend upon the fact that the sparks from the defendant's engines may have set fire to this property. It will be first, however, necessary for you to determine whether, in point of fact, any of the engines did set fire to it, because unless the plaintiff has satisfied you by the weight of the evidence of that fact there would be no occasion to go further. It seems to be conceded in this controversy that near the time when the fire was first discovered there were two trains passing in different ways, somewhere in that neighborhood; one was passing east; the other was going west; if this property was ignited from the engine of any train, and that spark was emitted in consequence of the negligent operation of that engine, it makes no difference what was its number. Was this fire the result of a spark communicated to that straw, or to the property in any other way, from either one of these two engines? I do not remember that there is any evidence referring to a condition of things that would make it possible for a spark at the time of this fire to have escaped from any other engines except two which are described by the plaintiff; one as being engine No. 315, and another unidentified by him, but described by the defendant as being engine No. 305. Was the fire communicated—if your recollection accords with mine upon the subject of these trains, and there being no other train to which any testimony applies as being possible to communicate the flame— did either one of the engines from those trains communicate the spark to this straw? Nobody saw a spark escape from a locomotive and drop upon the place, and, therefore, there is no direct evidence in this case that it came from either one of them; but it may not be necessary (depending upon circumstances), that anybody should actually see the spark drop from a passing engine before he may have the right to submit the question to you whether a fire was so ignited. Was there other evidence showing that sparks could be carried this particular distance; was there evidence of passing locomotives, or of one, at the time of the fire; was there any other explanation that could be given reasonably to account for the origin of the fire; was there a wind blowing from the direction of some passing locomotive at that time which might have carried the spark that distance; is there evidence that either of these engines emitted sparks of some kind? All these and any other considerations, if you find

them to exist in this case, would be proper for consideration in determining whether or not it be fairly proved by the preponderance of the testimony that a spark was communicated from either one or the other of these passing engines. If not, the case for the plaintiff ends here. . . . Has the plaintiff satisfied you that this spark may have come from either the engine 315, or the engine going east? If he has then it will be necessary for you to consider the conditions of both of those engines, but if he has not, and you are satisfied that if coming from either it could have come from engine No. 315 only, then it will only be necessary to consider the condition of that one. If you determine that this spark could have been emitted from engine 315, only, then no testimony respecting the condition of other engines would be relevant, or proper, for your consideration. The testimony of the witnesses, Bishop Judd, Joseph Applegate, William Rute, William H. Wohlbach, and all who testified to the emission of sparks from other and unidentified engines is introduced for the purpose alone that it may have some significance upon the question of negligence in the operation of that engine attached to the train going east; and if you find that the fire could not have been communicated from that engine, then you must disregard this testimony upon the subject of unidentified engines, except so far as it has been introduced by Mr. and Mrs. Wohlbach, William Reed and William Rute, if you believe it, to show that such engines, similar in structure and design, passing upon this track have the capacity to throw a spark the distance from the railroad track to these buildings; but that should not then be considered by you upon the subject of negligence in the construction, or operation, of these engines, but only for the single purpose stated. Do you find that this spark might have been communicated from either engine? If you do, is the engine going east identified? When engines are identified by a certain number, and it is claimed that an injury resulted from sparks emitted from it, then the only important consideration is to discover what was the condition of that offending engine. All testimony with reference to other engines generally is irrelevant and immaterial; and it must then be rejected no matter what their defects, if they caused no loss. It is in the first place, introduced to make a prima facie case for the plaintiff that calls upon the defendant

for an answer. Do you find that the engine going east has been identified by the defendant? The burden is upon him to do that. The plaintiff has introduced evidence intended to show the condition of the unidentified engines, this throws the burden then upon the defendant—in respect to this engine going east—of proving that it was known. He claims that it was No. 305, and if he has satisfied you that it was 305—he has also produced evidence of William Cease of the examination of that engine on July 18, 19 and 20, when it was, as claimed, in perfect condition with respect to the spark arrester; but the burden being upon the defendant to establish that fact the credibility of these witnesses is all for you.

You ought not to reject the testimony of any witness in a cause arbitrarily, but you must have some sufficient reason in your mind for such action, and its rejection should have some essential support founded in disbelief of it. Now if the defendant has satisfied you that the engine going east was identified as No. 305 I know of no testimony upon the part of the plaintiff in this case to prove the negligent operation of it. I have said it is not only necessary to prove that a spark was communicated to this property, but it is necessary to show the negligent operation of any engine from which the fire was occasioned. I know of no evidence directed to engine 305, if the defendant has satisfied you that this was the number on the east bound train. The plaintiff contends that if this be the fact, as the testimony upon the subject of unidentified engines was competent when it was received, it is to be considered in the case upon the theory that being evidence, referring to several or many unidentified engines, it includes any engine which the defendant may afterwards identify, it not being identified in the plaintiff's case. I cannot assent to that proposition. If it be shown that a fire was caused by sparks from an engine identified by the plaintiff it is proper to prove in support of an allegation of negligence emission of sparks from it shortly before and shortly after the fire, but in that event emission of sparks from other unidentified engines would not be admissible under the contention that such identified engine might have been included in the observation of witnesses whose testimony was directed to those which were thus unidentified. Where then it is established that a fire could have been ignited only from either one or the other of

two passing locomotives, one of which is identified by the plaintiff, and the other by the defendant, if such testimony is believed, evidence tending to prove the negligent operation of unidentified engines is no more relevant to the defective and negligent condition of the one identified by the defendant than it is to the one identified by the plaintiff. If a fact be established it is no less a fact when proved by the defendant, or because the plaintiff was without knowledge of it. If he be thus unexpectedly confronted by such proof from his adversary he may not oppose to it such proof as would have been incompetent had he been fully advised of the fact; he may, when not able to identify an engine, introduce evidence of the negligent operation of some, or many, of the unidentified ones, and thus make a prima facie case for himself until rebutted by the defendant upon whom the burden is now cast; if the defendant can then satisfy a jury that the sparks could come only from a particular engine, the case is subject to the limitations of the rule that the evidence relating to others is irrevelant (Sheldon v. Hudson River Railroad Company, 14 New York, 221).

If you should find that the defendant has identified the engine of the east bound train, and the credibility of these witnesses is for you and not me, then the testimony upon the subject of unidentified engines would be disregarded by you, because it would be irrelevant. If he has failed to satisfy you in this way that the engine is identified then you would have the right to consider in connection with the allegation of negligence, if you find that the spark might have been communicated from that engine going east, the testimony of these witnesses with reference to the operation of other and unidentified engines as evidence to be considered upon the question of negligence. If the spark could only have been communicated by engine 315 then all the other evidence becomes immaterial with reference to the unidentified engines, and you would reject it upon the subject of the defendant's negligence. Do you find that the spark could only have been communicated, if at all, from 315? I have said it is not sufficient to prove the emission of sparks. If you come to the conclusion that 315 is alone in question it remains for you to consider, if the sparks were emitted whether there is anything in the testimony to establish the negligence of the defendant company in not using efficient spark arresters,

or keeping them in proper condition, as I have defined its meas-
ure of duty.

Nobody saw the spark come from either engine upon this day
of the fire, but when it is reasonably proved by circumstances
that a spark came from one particular engine which is identi-
fied, and that ignited the fire although no one saw it, it is
proper to show by evidence that such engine shortly before and
shortly after the fire emitted sparks of the size and frequency
that would have been impossible if the locomotive had been
provided with a sufficient spark arrester. There is the testi-
mony of Edna Raden, and John Warrich, besides that of John
Ruple, upon the subject of this engine emitting sparks at other
times shortly before and shortly afterward, and I remember no
more than these. I have already referred to what has been said
concerning the credibility of John Ruple. John Warrich's pre-
vious examination in this case is called to your attention as con-
tradictory of his statement now, that he was not then served
with a subpœna, but came here voluntarily at the call of Ruple,
and that upon the stand now he says Mr. Steuben subpœnaed
him upon the other trial; he has testified to seeing emission of
sparks from engine 315; he has fixed certain occasions, one of
them being on August 6, and assigns the fact that it was his
birthday, and circumstances to indicate the date, and other
occasions in June. It is contended by the defendant that he
has shown by the order of George Bachman, and by these books
of Mr. Lynn, that he was not living there at all until Au-
gust 26. You are to determine this matter; Mr. Warrich, as
I remember, says that soon after he went there he began to deal
with Mr. Bachman, and the first order that is produced is on
August 29, but he calls Henry Westenmeyer, a brother-in-law,
who says that he moved upon the same day with him to this
place; and it was in the last of May or the beginning of June;
then you will consider the testimony of these books of Mr.
Lynn for whom he worked, showing entries on August 26,
which was long after the fire; but I do not remember that it
has been pointed out that these are the first entries in those
books against John Warrich; they are charges for teams, but
the purpose is not expressed, the defendant says they were for
moving him there, and you are to consider the significance of
these entries in these books, and also remember how your

attention has been called to them as not kept strictly as books of original entry where the dates are successively entered; they are received in connection with the testimony of John Warrich himself, and these Bachman orders that are produced, the first of which is August 29. Then he secured his present employment through the plaintiff, which it is to be considered. I am not able to refer to all the proofs, and you are not to understand that what I am stating either upon one side or the other is all that is to be considered upon any subject; you must recollect the whole of the testimony.

Then we come to Edna Raden; upon a previous trial of this case she testified that she saw no sparks coming from 315; now she says they did, and that she was then induced to change her testimony by Mr. Beers, who is the representative of the defendant company. Mr. Beers denies it; Mr. Kindt and Mrs. Kindt are called to corroborate him, and then the plaintiff calls Mr. Jacoby, the brother-in-law of the plaintiff, and Robert Osterstock, a hostler at the hotel; you will recollect what all of these people say, what significance this testimony has, and how much it may effect the credibility of the witness is entirely for your consideration, and not for mine. If the engine was in the Ashley shops from July 5 to 15, and you find the fact to be so, as the fire was on July 19, none of the witnesses could have seen it upon the road during this period before the fire.

Defendant's points and the answers thereto among others were as follows:

1. Under all the law and the evidence, the verdict must be for the defendant. *Answer:* Denied. [1]

2. There is no evidence of negligence on the part of the defendant, and the plaintiff cannot recover. *Answer:* Denied. [2]

3. The lease of the Central Railroad Company of New Jersey to the Port Reading Railroad Company was valid and duly authorized by law. *Answer:* Denied. [3]

4. Inasmuch as the Central Company leased its lines of railroad to the Port Reading Railroad Company, and the Port Reading Company, as it appears from the undisputed testimony was operating said railroad on July 19, 1892, there can be no recovery against this defendant. *Answer:* Denied. [4]

5. The testimony of the following witnesses, viz: Edna Raden, John Warg, Bishop Judd, W. H. Wohlbach, Mrs. W.

H. Wohlbach, William Reed, Joseph Applegate, William Rute and Oliver Breyfogle, in so far as it relates to unidentified engines throwing sparks on this railroad should be disregarded by the jury in its finding, and the same should be withdrawn from the consideration of the jury. *Answer:* Denied as stated, but I refer you to what I have said upon this subject in my general charge. [5]

7. As the testimony shows that the engine which passed Dryland east bound about the time of the fire was engine 305, all testimony relating to unidentified engines must be disregarded by the jury in its finding, and must not be considered by them. *Answer:* Denied. The credibility of the witnesses and the evidences by which defendant claims this identification is for the jury. You will remember what I have said in my charge upon this subject. [7]

Verdict and judgment for plaintiff for $2,737.55. Defendant appealed.

*Errors assigned* were (1-5, 7) above instructions, quoting them.

*Edward J. Fox*, with him *James W. Fox*, for appellant, cited on the question of lease : Ry. Cos. v. Bridge Co., 131 U. S. 371; Rafferty v. Traction Co., 147 Pa. 579; Ry. v. Keokuk Bridge Co., 131 U. S. 389; Hampe v. Traction Co., 165 Pa. 474; Altoona R. R. v. R. R., 177 Pa. 447; Trust Co. v. Ry., 117 U. S. 434; Santa Clara Co. v. R. R., 118 U. S. 409; Hancock v. Louisville R. R., 145 U. S. 409; Buck Mountain Coal Co. v. Nav. Co., 50 Pa. 100; Sparhawk v. Pass. Ry., 54 Pa. 421; Com. v. Bank, 2 Grant, 392; Com. v. Bridge Co., 20 Pa. 185 ; Murphy v. Farmers' Bank, 20 Pa. 415 ; Com. v. R. R., 20 Pa. 518; People v. Fishkill, 27 Barber, 452; Feital v. R. R., 109 Mass. 398; McCluer v. R. R., 13 Gray, 124; Ditchett v. R. R., 67 N. Y. 425; Miller v. R. R., 47 Am. & Eng. R. R. Cases, 369; Arrowsmith v. R. R. Co., 59 Am. & Eng. R. R. Cases, 79; Stockton v. Central R. R. Co., 50 N. J. Eq. 52; Dinsmore v. Cent. R. R., 16 Am. & Eng. R. R. Cases, 450 ; and on the question of negligence : Longenecker v. R. R., 105 Pa. 332; R. R. v. Yerger, 73 Pa. 121 ; Jennings v. R. R., 93 Pa. 337; Post v. R. R., 108 Pa. 585; Erie Ry. v. Decker, 78 Pa. 293 ; Hen-

derson v. R. R., 144 Pa. 478; Huyett v. R. R., 23 Pa. 374; R. R. v. Watson, 81 * Pa. 293; Philadelphia & Reading R. R. v. Schultz, 93 Pa. 341.

*O. H. Meyers* and *W. S. & M. Kirkpatrick*, for appellee, were not heard but cited on the question of lease: Abbott v. R. R., 80 N. Y. 27; Ohio & Miss. R. R. v. Dunbar, 20 Ill. 623; 1 Redfield on Railways, sec. 142, pl. 2; Ottawa, etc., R. R. v. Black, 79 Ill. 262; Troy & Boston R. R. v. B., H. T. & W. Ry. Co., 86 N. Y. 107; Shrewsbury & B. Ry. v. Northwestern Ry. Co., 6 H. of L. Cases, 113; Pierce on Railroads, 283; Pittsburg, etc., R. R. v. Bedford, etc., R. R., 81 * Pa. 104; and on the question of negligence: Longenecker v. R. R., 105 Pa. 332; Huyett v. P. & R. R., 23 Pa. 374; P. & R. R. v. Hendrickson, 80 Pa. 182; R. R. v. Watson, 81 * Pa. 293; R. R. v. McKeen, 90 Pa. 122; P. & R. R. v. Schultz, 93 Pa. 341; Del., Lack. & West. R. R. v. Jones, 128 Pa. 314.

OPINION BY MR. JUSTICE McCOLLUM, April 4, 1898:

When this case was here before we held that the defendant company had not shown a warrant in the statutes of this commonwealth for the Port Reading lease, and that the Port Reading company in operating the Lehigh and Susquehanna Railroad must be considered as the agent of the defendant company. We also held that upon the evidence in the case the question whether the destruction of the plaintiff's property by fire was chargeable to the negligent operation of the road was for the jury. On the second trial of the case the rulings of the court below conformed to the rulings above stated and resulted in a verdict and judgment for the plaintiff. It was contended on the appeal from this judgment that, because of the evidence presented by the defendant company on the second trial in addition to the evidence presented by it on the first trial, the court should have directed the jury to find for the defendant. In order to ascertain whether there was any basis for this contention we have carefully examined the evidence introduced by the defendant on the second trial. Our examination of this evidence has satisfied us that it is substantially the same as the evidence presented by the defendant on the first trial, and that neither branch of the defense to this action was strengthened

by it.   We can find nothing in it or the statutes affording any
support to the claim that the Port Reading lease was valid and
exonerated the defendant from liability for damages caused by
the negligent operation of the Lehigh and Susquehanna Rail-
road, nor can we find anything in the evidence which would
have justified the court in holding that the destruction of the
plaintiff's property by fire was not attributable to its negligence.
It follows that the rulings of the court below on the controlling
questions in the case should be sustained.   There are no other
questions raised by the specifications which require consideration.

Judgment affirmed.